1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Raquel Alina Cervantez,                    No. CV-16-02914-PHX-JZB

10              Plaintiff,                       **ORDER**

11   v.

12   Commissioner    of    Social    Security
     Administration,

13
              Defendant.

14

15          Plaintiff Raquel Alina Cervantez seeks review of the Social Security

16   Administration Commissioner's decision denying her application for disability benefits

17   under the Social Security Act. (Doc. 1; Doc. 17.) For the reasons below, the Court will

18   vacate the Commissioner's decision and remand this matter for an award of benefits.

19   **I.    Background**

20          On July 16, 2014, Plaintiff filed a Title XVI application for disability benefits.

21   (AR[1] 141.) Plaintiff asserts disability beginning on December 30, 2005. Plaintiff's

22   application was initially denied on December 22, 2014, and upon reconsideration on June

23   1, 2015. (*Id.* at 98-101, 104-07.) Plaintiff requested a hearing which took place on March

24   24, 2016. (*Id.* at 119.) Administrative Law Judge (ALJ) Laura S. Havens denied

25   Plaintiff's application for benefits in a decision dated April 26, 2016. (*Id.* at 13-40.) On

26   July 26, 2016 the Appeals Council denied Plaintiff's request for review of the ALJ's

27   decision, making the ALJ's decision the final decision of the Commissioner of the Social

28          ──────────────────────

            [1] Citations to "AR" are to the administrative record.

Security Administration. (*Id.* at 1-3.)

On August 30, 2016, having exhausted the administrative review process, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c). (Doc. 1.) On January 16, 2017, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 17.) Defendant filed a Response Brief in support of the Commissioner's decision on February 15, 2017. (Doc. 18.) On February 28, 2017, Plaintiff filed a reply brief. (Doc. 19.)

## II. Legal Standard

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the

claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff was not disabled and not entitled to benefits (AR 35.) At step one, the ALJ concluded the Plaintiff did not engage in substantial gainful activity since the application date. (*Id.* at 18.) At step two, the ALJ determined the Plaintiff has the following severe impairments: "degenerative disc disease, fibromyalgia syndrome, reflex sympathetic dystrophy of the right lower extremity, depression, anxiety, [and] bipolar disorder (20 CFR 404.1520(c))." (*Id.*)

At step three, the ALJ found that the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." (*Id.*) At step four, the ALJ determined that Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except:

> [S]he can sit six hours out of an eight-hour work day; she can stand or walk two hours out of an eight-hour workday. She requires a sit/stand option every thirty minutes. She can lift, carry, push and pull ten pounds frequently and twenty pounds occasionally. She can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, and crawl. She can have only occasional exposure to heights, moving machinery, humidity, temperature extremes, and vibrations. She can occasionally understand, remember, and carry out complex and detailed job instructions. She can only occasionally interact with coworkers and the public.

(*Id.* at 20.)

The ALJ further found that Plaintiff has no past relevant work. (*Id.* at 34.) At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since . . . the date

the application was filed." (*Id.* at 35.)

## III. Analysis

Plaintiff alleges that the ALJ erred in weighing medical opinion evidence and by discounting Plaintiff's symptom testimony. (Doc. 17.) Specifically, Plaintiff contends the ALJ erred by (1) failing to provide specific and legitimate reasons for not assigning controlling weight to the treating physician's opinion, and (2) by failing to provide clear and convincing reasons for finding Plaintiff not credible. (*Id.*) The Court addresses Plaintiff's arguments below.

### a. Weighing of Medical Opinion Evidence

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for not assigning controlling weight to the opinions of Dr. Ajay Narwani, Plaintiff's treating pain specialist. (Doc. 17 at 10.) Below, the Court addresses the ALJ's treatment of Dr. Narwani's opinions.

#### i. Legal Standard

In weighing medical evidence, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). However, a non-treating or non-examining physician's opinions may serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence of record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### ii.    Dr. Narwani's Opinions

Plaintiff sought treatment from Dr. Narwani from December 2012 to March 2016. (*See* AR 308-405, 614-712, 1125-1221.) On April 4, 2016, Dr. Narwani completed a treating source statement (*Id.* at 1229-32.) In this treating source statement, Dr. Narwani opined Plaintiff suffers moderate to extreme pain that causes sleep disturbance, mood swings, difficulty concentrating or thinking, appetite disturbance, and decreased energy or stamina. (*Id.* at 1229.) Dr. Narwani opined that Plaintiff's use of morphine for chronic pain causes side effects that would interfere with regular work activity. (*Id.*) Dr. Narwani further opined that Plaintiff's daily living activities are moderately affected by her condition, and that Plaintiff's limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace is extreme. (*Id.* at 1230.) Dr. Narwani opined that Plaintiff would require breaks every 20 to 30 minutes, would be able to lift and carry five pounds occasionally,[2] and would never be able to lift and carry ten pounds or greater. (*Id.*) Dr. Narwani also opined that Plaintiff would be able to climb stairs and ramps and balance occasionally, and that the Plaintiff would never be able to climb ladders or scaffolds, stoop, kneel, crouch, or bend at the waist. (*Id.* at 1232.) Finally, Dr. Narwani opined that Plaintiff would have to miss work more than four times a month as a

---

[2] The form used by Dr. Narwani defines "occasionally" as one-third of the day. (AR 1230.)

result of her impairments. (*Id.*)

Dr. Narwani's opinions were contradicted by the opinions' of consultative examining physicians, Dr. Paul Bendheim and Dr. Matthew Khumalo. (AR 532-37, 1095-1106.) Therefore, the ALJ could discount Dr. Narwani's opinions only for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31; *Garrison*, 759 F.3d at 1015.

### iii.    The ALJ erred by assigning the opinions of Plaintiff's treating pain specialist, Dr. Narwani, little weight.

The ALJ gave Dr. Narwani's opinions "little weight" because the severity opined "is not supported by the medical evidence of record," and "is not likely to last for the requisite twelve-month period." (AR 30.) The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Narwani's opinions little weight.

First, the ALJ does not cite to specific evidence or provide any explanation for why the severity opined by Dr. Narwani is "not supported by the medical evidence of record." (*Id.*) The ALJ references a number of Dr. Narwani's treatment notes that document Plaintiff's visits, but fails to explain why these treatment notes inadequately support Dr. Narwani's opinions. The ALJ further fails to specify or explain which medical records do not support Dr. Narwani's findings. (*Id.* at 22-26.) In fact, a number of Dr. Narwani's treatment notes reflect findings that are consistent with his opinions regarding Plaintiff's limitations. (*Id.* at 308-405, 614-712, 1125-1221.) For example, Plaintiff frequently reported her pain to Dr. Narwani as "continuous" and "constant," and reported worsening factors such as increased activity, movement, walking, going up stairs, going down stairs, prolonged sitting, and prolonged standing. (*See, e.g., id.* at 348, 397, 644, 687, 1130, 1161, 1208.) Plaintiff also consistently rated her current pain at appointments as seven out of ten or above. (*See, e.g., id.* at 365, 382, 397, 648, 709, 1137, 1180.) Numerous treatment notes from Dr. Narwani identify positive straight leg raise tests, antalgic gait, limited range of motion, and lower spine musculature tenderness,

tightness, and trigger points in physical examinations dating back to March 2013. (*See, e.g., id.* at 388-89, 649-50, 683-84, 1138-39, 1199-1200.) Also, Dr. Narwani recommended Plaintiff for Trigger Point Injections for her pain—at times on a weekly basis—from 2013 to 2016. (*Id.* at 308-405, 614-712, 1125-1221.) The records reveal five appointments for Trigger Point Injections in October 2015 alone, which is consistent with Dr. Narwani's opinions that Plaintiff would be absent from work more than four times a week. (*Id.* at 1161-64, 1165-68, 1169-72, 1173-75, 1176-79, 1229-32.)

The ALJ gave "substantial weight" to Dr. Bendheim's November 2014 findings because they are "consistent with the medical evidence of record, and Dr. Bendheim is a qualified expert who had the opportunity to evaluate the Plaintiff face to face." (AR 29.) However, other than these conclusory statements, the ALJ does not provide any basis for giving Dr. Bendheim's opinion more weight than Plaintiff's treating pain management specialist. Importantly, Dr. Bendheim did not opine regarding Plaintiff's specific functional limitations. (*Id.* at 532-37.) Also, Dr. Bendheim only had a portion of Plaintiff's psychiatric records and no medical or radiographic procedures to review to inform him of Plaintiff's condition. (*Id.* at 533.) Dr. Bendheim even recommended Plaintiff seek "evaluation by a pain specialist regarding her anterior groin pain and possible reflex sympathetic dystrophy," when at the time, Plaintiff had been treated by Dr. Narwani—a pain specialist—for nearly two years. (*Id.* at 400, 536-37.) The ALJ omitted specific discussion of how Dr. Bendheim's findings contradict Dr. Narwani's opinions or how Dr. Bendheim's findings may be consistent with Dr. Narwani's findings, including positive straight leg raising testing, decreased lumbar lordosis, tenderness upon palpitation in the lumbar spine, antalgic gait, decreased sensation, and chronic groin pain. (*Id.* at 535-36.)

The ALJ also gave "substantial weight" to Dr. Khumalo's February 2016 opinions because they are "consistent with the medical evidence of record, and Dr. Khumalo is a qualified expert who had the opportunity to evaluate, test, observe, and examine the claimant face to face." (AR 30.) Again, aside from these brief conclusions, the ALJ

provides no other specific reasoning for giving Dr. Khumalo's opinions substantial weight, while giving Dr. Narwani's opinions little weight. Dr. Khumalo was even more limited in his examination than Dr. Bendheim because he had no past records to review at all. (*Id.* at 1095.) Based on his examination, Dr. Khumalo opined that Plaintiff can stand or walk for two hours in a work day, sit for six hours in a work day, climb stairs or ramps occasionally, and balance, stoop, kneel, crouch, and crawl occasionally. (*Id.* at 1098-1102.) The ALJ does not explain how Dr. Khumalo's findings are consistent with other medical evidence or inconsistent with Dr. Narwani's opinions. Also, the ALJ omits specific discussion of Dr. Khumalo's examination findings that are consistent with Dr. Narwani's opinions, including muscular tenderness in the lumbothoracic region bilaterally, diminished range of motion, diagnosis of reflex sympathetic dystrophy, and chronic pain. (*Id.* at 1096.)

The ALJ gave "partial weight" to the opinions of non-examining state-agency physician Dr. Combs because they are "generally consistent with the medical evidence of record." (*Id.* at 29.) The ALJ awarded Dr. Combs' opinion only partial weight because she found that, "based on evidence adduced at the hearing level … the [Plaintiff] is more restricted in standing and walking than Dr. Combs opined." (*Id.*) Dr. Combs opined that Plaintiff can occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand or walk for six hours in an eight hour work day, and sit for six hours in an eight hour work day. (*Id.* at 90.) Dr. Combs also opined Plaintiff can occasionally climb ramps, stairs, ladders, ropes, and scaffolds, can occasionally stoop, kneel, crouch, and crawl, and can frequently balance. (*Id.*) The ALJ provides no further explanation or analysis as to why she gave Dr. Combs' opinions partial weight, while giving Dr. Narwani's opinions little weight.

The ALJ summarized the treating, examining, and non-examining doctors' opinions and gave Dr. Narwani's opinions little weight without giving any specific reasons for discounting the treating specialist's opinions and without clarifying which evidence she relied on to support her conclusions. Rather, the ALJ simply gives a

conclusory statement of her opinion. But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. Therefore, the Court finds this conclusory reasoning is not supported by substantial evidence and constitutes an insufficient basis on which to give little weight to Dr. Narwani's opinions.

Second, the ALJ does not explain how she came to the conclusion that "the severity opined . . . is not likely to last for the requisite twelve-month period." (AR 30.) Instead, she gives substantial weight to the medical testimony of the consultative examining doctors who were not able to reach a consensus about the duration of Plaintiff's condition. The most recent examining physician, Dr. Khumalo, opined in 2016 that the limitations he found lasted or will last for twelve consecutive months. (*Id.* at 1105.) However in 2014, over one year prior, examining physician Dr. Paul Bendheim opined that Plaintiff's condition would not "impose any limitations for twelve continuous months." (*Id.* at 536.) The ALJ entirely fails to clarify the examiners' contradicting opinions or to relate these medical opinions to the rejected opinions of Dr. Narwani who had been seeing Plaintiff for her chronic condition since December 2012 and most likely could better adduce a longitudinal picture of Plaintiff's condition. Therefore, the Court finds this reason is also not specific, legitimate, or supported by substantial evidence.

### b. Plaintiff's Symptom Testimony

Plaintiff also argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. (Doc. 17 at 16-24.) The Court addresses this argument below.

### i. Legal Standard

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014-15 (citing *Lingenfelter*, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996). Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160-61 (9th Cir. 2008) ("[R]equiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom … requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to do work. *See* 20 C.F.R. § 404.1529(c)(1). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see Orn*, 495 F.3d at 637-39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at

1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

### ii. Plaintiff's Testimony

Plaintiff testified that she has degenerative disc disease, fibromyalgia, reflex sympathetic dystrophy of the right lower extremity, depression, bipolar disorder, and anxiety. (AR 46-47.) Plaintiff testified that she can usually dress and bathe herself except she sometimes needs help putting her underwear on. (*Id.* at 47.) Plaintiff claimed that she does not do many chores except that she will wash her own dish if she makes herself something to eat, does her own laundry, and buys her own groceries. (*Id.* at 48.) Plaintiff testified that she cannot mop, do any yard work or gardening, or exercise. (*Id.*) Plaintiff further claimed that she watches television for seven hours a day on average. (*Id.*) Plaintiff testified that she does not drive and claims she goes "absolutely nowhere." (*Id.* at 49.) Plaintiff also testified that her medication makes her sleepy and nauseated. (*Id.* at 50.) Plaintiff also claimed that she can only walk for five to ten minutes before she has to sit down. (*Id.* at 51.) Plaintiff claimed that she visits her pain doctor on a weekly basis and her mental health doctor once every two to three months—sometimes every six to eight weeks. (*Id.*) On average, Plaintiff rated her pain at a seven out of ten and claims that she has to lie down every day for a couple of hours to relieve the pain—sometimes multiple times a day. (*Id.* at 52, 55.)

### iii. The ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (AR 21.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (*Id.*) Here, because there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony regarding the severity of her symptoms.

The ALJ determined Plaintiff's testimony was "not entirely consistent" with the medical evidence and other evidence because (1) Plaintiff's "activities of daily living are not consistent with her allegations of complete disability;" and (2) Plaintiff made inconsistent statements. (AR 34.) The Court finds these are not sufficient reasons for discounting Plaintiff's testimony.

First, while an ALJ may discredit a claimant's allegations if a claimant has "engaged in numerous daily activities involving skills that could be transferred to the workplace," *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001).

Here, the ALJ asserts that Plaintiff's activities of daily living include the ability to "bathe, groom, toilet, and take care of her personal hygiene without assistance, except that she needs help to put on pants." (AR 34.) The ALJ also cites to Plaintiff's ability to prepare simple meals, feed herself, do household chores such as laundry, and shop in the store for necessities. (*Id.*) Lastly, the ALJ notes that Plaintiff can "sort, hand [sic], and use paper files." (*Id.*) The ALJ never specifies how often or long Plaintiff can engage in these activities or if the activities comprise a substantial part of Plaintiff's day. The ALJ

also never specifies how engaging in these activities is inconsistent with Plaintiff's allegations of complete disability. Also, the ALJ makes no finding as to how limited Plaintiff is in these activities or whether these activities are transferrable to the workplace. The ALJ only lists Plaintiff's activities and does not clearly detail which part of Plaintiff's testimony is not credible or what evidence undermines Plaintiff's complaints. The ALJ's conclusory findings do not equate to clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom testimony.

Second, the ALJ points to a discrepancy between claims Plaintiff made about her high school completion status. (*Id.*) The ALJ identifies a statement Plaintiff made to consultative examiner Dr. Steven Hirdes that she dropped out of high school, which contradict records from Dr. Narwani that indicate Plaintiff completed high school. (*Id.*) The ALJ also asserts that Plaintiff has made inconsistent statements regarding self-harm behavior. (*Id.*) The ALJ compares a record from Aurora Hospital reporting Plaintiff never engaged in self-harm behavior against statements Plaintiff made to Dr. Hirdes claiming she cut herself, pulled her hair and eyelashes out, and burned herself with an iron. (*Id.*) Notably, multiple pages in the same record from Aurora Hospital confirm Plaintiff's self-harming behavior and record it in more detail than the general form on the first page that indicated no history of self-harming behavior. (*Id.* at 807, 813, 821, 823.)

However, the ALJ makes no effort to explain how these inconsistencies undermine Plaintiff's specific testimony about the severity of her pain symptoms. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (finding error where the ALJ's conclusory statement that "the functional limitations from the claimant's impairments were less serious than she has alleged" was based on "unspecified claimant testimony and a summary of medical evidence."). Without further analysis regarding whether the inconsistent statements undermine Plaintiff's claims about the intensity and persistence of her pain, the Court finds that simply pointing out these inconsistencies is not a sufficient basis on which to discredit

Plaintiff's symptom testimony about the severity of her pain.

The Commissioner argues that the ALJ "reasonably considered that Plaintiff's evasiveness and apparent symptom magnification during Dr. Bendheim's examination detracted from the reliability of Plaintiff's allegations." (Doc. 18 at 6.) More specifically, Defendant cites to the giveaway weakness of Plaintiff's right quadriceps noted in Dr. Bendheim's examination. (AR 534.) Defendant theorizes the giveaway weakness noted by Dr. Bendheim is a sign of symptom magnification and malingering. (Doc. 18 at 6.) However, the ALJ did not make a finding of malingering, and does not specifically cite to the giveaway weakness during Dr. Bendheim's examination as a basis for giving Plaintiff's symptom testimony little weight. Also, the ALJ does not specifically rely on any portion of Dr. Bendheim's medical opinions as support for her decision to discount Plaintiff's symptom testimony. "[T]he Court reviews only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. Remand for an award of benefits is appropriate here.

Having determined that the ALJ's decision is not supported by substantial evidence, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. The Court has discretion to remand for an award of benefits or for further proceedings. *Smolen*, 80 F.3d at 1292.

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler v. Comm'r, SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove

enlightening."). Conversely, in appropriate circumstances "courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019. The case can be remanded to an ALJ with instructions to award benefits when each of the following are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. If all three criteria are met the case should be remanded for award of benefits unless an "evaluation of the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

First, the Court finds the record as a whole is fully developed. The ALJ had an opportunity to review Plaintiff's medical record and testimony, and further administrative proceedings would serve no useful purpose. Second, as the Court discussed in detail above, the ALJ failed to provide legally sufficient reasons for giving the opinions of Plaintiff's treating pain specialist, Dr. Narwani, little weight. The ALJ further erred by failing to provide legally sufficient reasons for discrediting Plaintiff's symptom testimony. Finally, the vocational expert testified that in order to maintain work only two absences would be tolerated per month, and an individual could only be off task up to fifteen percent of the work day. (AR 60-65.) If the limitations opined by Dr. Narwani were credited as true—that Plaintiff would have to miss work more than four times a month—Plaintiff would be unable to maintain work due to her absences and the ALJ would be required to find Plaintiff disabled. (*Id.* at 63, 1229-34.) Also, if Plaintiff's symptom testimony were credited as true—that due to the severity of the pain she cannot stand for more than five to ten minutes and she has to lie down every day for a couple of hours (sometimes multiple times a day)—Plaintiff would be unable to maintain work due to her inability to stay on task for multiple hours per day and the ALJ would be required

to find Plaintiff disabled. (*Id.* at 51, 55, 64.) Under these circumstances, the Court finds remanding for an award of benefits is appropriate.

Defendant argues that remanding for an award of benefits is improper because the requirements of the credit-as-true doctrine are not satisfied. (Doc. 18 at 14.) Defendant argues that the contradictory examining opinions of Dr. Bendheim and Dr. Khumalo prohibit application of the doctrine and require remand for further proceedings. (*Id.*) However, the ALJ had the full opportunity to review the records and resolve any contradictions. Also, the Commissioner does not provide any arguments or explanations for how the medical evidence casts serious doubt on Plaintiff's claim to be disabled. The opinions of examining physicians' Dr. Bendheim and Dr. Khumalo—who each only examined Plaintiff once and both without relevant medical records—conform with Dr. Narwani's medical opinions that Plaintiff experiences chronic pain, muscular tenderness, limited range of motion, and reflex sympathetic dystrophy.[3] (AR 532-37, 1095-1106.) As shown in the record, Plaintiff has been afflicted with a number of severe impairments since at least 2012 and has been receiving pain management treatment for these impairments on a regular basis. (AR 308-405, 614-712, 1125-1221). After reviewing the record, this Court sees no reason to seriously doubt that Plaintiff is disabled. Allowing the ALJ "to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). *See also Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [Plaintiff] is not credible any more than [Plaintiff], had [s]he lost, should have an opportunity for remand and further proceedings to establish [her] credibility.").

In addition, Plaintiff applied for benefits three years ago. (AR 141-46.) Applicants for disability benefits "… can experience tremendous financial difficulties while awaiting

---

[3] Dr. Bendheim's report recommends Plaintiff seek "evaluation by a pain specialist regarding … *possible* reflex sympathetic dystrophy." (AR 536-37) (emphasis added). At that time, Plaintiff had been treated by a pain specialist for reflex sympathetic dystrophy since December 2012—nearly two years. (*Id.* at 400.)

the outcome of their appeals and proceedings on remand." *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1398 (9th Cir. 1988). The Court does not wish to further delay the benefits to Plaintiff as a result of the agency's denial of her application.

The ALJ provided legally insufficient reasons for giving the opinions of Plaintiff's treating pain management specialist, Dr. Narwani, little weight. The ALJ also provided legally insufficient reasons for discrediting Plaintiff's symptom testimony. Because no remaining issues exist to be resolved and no serious doubt exists about Plaintiff's disability, this Court concludes that Plaintiff is entitled to remand for an immediate award of benefits.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is vacated and this matter is remanded back to the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 6th day of July, 2017.

Honorable John Z. Boyle
United States Magistrate Judge